**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSH LENCHICK,** | : | |
| | | **3:17-CR-188** |
| **Petitioner** | : | |
| v. | | |
| | : | **(JUDGE MANNION)** |
| **WARDEN D. EASTER,** | : | |
| **Respondent** | : | |

**MEMORANDUM**

## I. BACKGROUND

On May 14, 2020, petitioner Josh Lenchick, an inmate at FCI-Danbury, Connecticut, filed, *pro se*, a letter Motion for Immediate Compassionate Release to Home Confinement and attached exhibits in support of his Motion, (Doc. 706), including a copy of Warden Easter's response to his request for Compassionate Release under 18 U.S.C. §3582(c)(1)(A), based on his concerns over the COVID-19 virus. In her April 29, 2020 response denying Lenchick's request, Easter indicates that he "[has been reviewed under the [Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003]", and that "based on current guidelines you are ineligible for release to home confinement." (Id. at 3). In his filing, Lenchick essentially requests the court to direct the BOP to immediately transfer him from prison to home confinement at his mother's house in Luzerne, Pennsylvania, which the court construes as a petition for writ of

1

habeas corpus pursuant to 28 U.S.C. §2241, related to his 60-month prison sentence, due to the COVID-19 pandemic. (Doc. 706). [1] In particular, Lenchick seeks the court to alter his sentence and to immediately release him from confinement in prison at FCI-Danbury to home confinement with his mother due to his fear that he may contract the COVID-19 virus in the prison which he alleges is "one of [the] virus Hot Zones", seemingly referring to the Danbury prison's designation by Attorney General Barr in his April 3, 2020 Memorandum to the BOP.  He contends that he is at risk of contracting the virus since "there are already confirmed cases of COVID-19 [at the prison]" and one death. Lenchick also alleges that a class action lawsuit is pending against the prison "due to the way [it] has handled this pandemic." Lenchick further alleges that the inmates "are housed in close quarters and the medical staff is insufficient." Additionally, Lenchick alleges that he has medical conditions (physical and mental), namely, PTSD, "sever anixty" (sic), depression, asthma, as well as obesity, that will put him at greater risk to

---

[1]The court notes that although Lenchick does not cite to any statutory basis for his motion, the court does not find his filing as a motion against the government. Rather, upon review, the court finds that it is a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. *See* Cordaro v. Finley, 2020 WL 2084960 (April 30, 2020). Thus, the court construes Lenchick to be the petitioner, and the proper respondent is Warden Easter at FCI-Danbury. *See* 28 U.S.C. §2243. "The writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004).

suffer more severe consequences if he does contract the virus. Also, Lenchick is currently 31 years old (DOB July 3, 1988) and not in the high risk age category.[2] Alternatively, the court could construe Lenchick's filing as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

However, for the reasons set forth below, the court will construe Lenchick's motion as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and it will transfer his case to the District of Connecticut, where habeas jurisdiction properly arises.[3]

Insofar as Lenchick's filing is considered as a motion for compassionate release, it will be dismissed without prejudice for lack of jurisdiction due to his clear failure to exhaust his BOP administrative

---

[2] The court notes that it considered Lenchick's age as well as his physical condition stated in his PSR, (Doc. 347 at 2, 12-13), which reflects that he was prescribed Ibuprofen and Amoxicillin after he had surgery in 2017 to repair facial fractures, and that he was diagnosed with PTSD, anxiety and bipolar disorder. Lenchick reported that he was not prescribed medication for his mental conditions.

[3] "There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. §2241." Furando v. Ortiz, 2020 WL 1922357, *3 (D.N.J. April 21, 2020) (citing Callwood v. Enos, 230 F.3d 627, 633-34 (3d Cir. 2000)). Even though it appears that defendant has not exhausted all of his administrative remedies available with the BOP regarding her habeas petition, the court will leave it up to the District Court that has jurisdiction over his petition to decide whether it should be dismissed without prejudice. *See* Furando, *supra* (court dismissed without prejudice the habeas petition of inmate serving his federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.).

remedies under §3582(c)(1)(A)(i). In fact, in her recent April 29, 2020 response denying Lenchick's request for compassionate release to home confinement, Warden Easter advised him that "[i]f you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response." Lenchick does not state that he filed any appeal of the Warden's decision and the time to do so has not yet expired. Nor does Lenchick allege that he should be excused from the requirement that he must exhaust his BOP administrative remedies prior to filing a request with the court for compassionate release. To the extent Lenchick is deemed as seeking the court to order the BOP to find him eligible for immediate home confinement designation under the CARES Act, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[4]

---

[4]Even though the government has not yet responded to Lenchick's motion, in light of the emergency nature of the motion, the court will transfer it to the proper District to the extent it is a §2241 habeas petition. Also, insofar as Lenchick's motion is one for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A), the court can act *sua sponte* to dismiss it based on lack of jurisdiction since it is apparent on the face of his motion that he did not exhaust his administrative remedies.

## II.    DISCUSSION[5]

In his present 2-page letter Motion, (Doc. 706), Lenchick seeks his immediate transfer from FCI-Danbury to home confinement and requests the court to allow him to serve the remainder of his 60-month prison sentence in home confinement with his mother in Luzerne County, Pennsylvania. The court notes that in Luzerne County, where Lenchick wishes to be placed on home confinement with his mother, as of May 15, 2020, there were 2,477 positive COVID-19 cases reported and 124 deaths. *See* PA Dept. of Health website.

Lenchick states that since FCI-Danbury is a "Hot Zone" and has confirmed cases of the COVID-19 virus and one death, he seemingly fears he may contract the virus based on the alleged close quarters in which inmates are housed. Further, Lenchick states that he does not pose any safety threat based on his custody classification and that he has served over 50% of his prison sentence. He states that he is enrolled in RDAP and the Resolve Program at the prison, and his exhibits indicate that he has taken several courses. Lenchick provides a copy of his BOP Individualized Needs Plan dated April 21, 2020, which indicates that he is eligible for RRC placement on September 9, 2020. The form also indicates that Lenchick has

---

[5]Lenchick is currently serving a 60-month prison sentence that was imposed by this court on May 1, 2018, after he pled guilty to conspiracy to distribute and possess with intent to distribute heroin and cocaine base (crack), 21 U.S.C. §841. Lenchick was also ordered to be on 4-years of supervised release following the service of his prison sentence. (Doc. 397).

maintained clear conduct and free from incident reports the past six months. Lenchick's projected release date is March 7, 2021. (Doc. 706 at 4-5). Lenchick also states that his re-entry home plan has already been approved by the probation department. As stated, he indicates that he will live with his mother if the court directs the BOP to release him to home confinement.

Thus, Lenchick is liberally construed as contending that the recommended safe practices to curtail the spread of the virus are not being followed at FCI-Danbury even though it is a "Hot Zone." Based on these allegations, Lenchick requests the court to consider him for immediate release to home confinement. He is also construed as claiming that he qualifies for such release from prison under the CARES Act since Warden Easter referenced the Act in her response to Lenchick's home confinement request.[6]

As this court recently did in Cordaro, 2020 WL 2084960, *3, as well as other similar cases, *see e.g.,* United States v. Taylor, 2020 WL 2084974 (M.D.Pa. April 30, 2020), the court construes Lenchick's instant filing as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.

---

[6] Since this court is well-aware of all of the safety measures implemented by the BOP in response to the COVID-19 virus, *see* Cordaro, *supra*, and since many of the measures are found on the BOP's website, they are not repeated herein. Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/.

No doubt that a habeas petition under §2241 is the proper vehicle for an inmate to challenge "the fact or length of confinement", Presser v. Rodriguez, 411 U.S. 475, 494 (1973), or the "execution" of his confinement. Woodall v. Fed. BOP, 432 F.3d 235, 241-42 (3d Cir. 2005). Further, the court must look to the remedy requested by the inmate to determine if he is seeking relief available in a habeas petition. "When a petitioner seeks immediate release from custody, the 'sole federal remedy' lies in habeas corpus." Camacho Lopez v. Lowe, 2020 WL 1689874, *8 (M.D.Pa. April 7, 2020) (citing Presser, 411 U.S. at 500).

In Camacho Lopez, the petitioner was an ICE detainee subject to a final removal order whose removal was set for March 30, 2020, but delayed due to his COVID-19 diagnosis. The petitioner filed a §2241 habeas petition seeking immediate release from confinement based on "the threat posed by the COVID-19 viral pandemic." The respondent argued that Camacho Lopez's petition should be construed as a civil rights action under 42 U.S.C. §1983. The court found that "the extraordinary conditions of confinement" "where the petitioner tested positive for and had been hospitalized by a potentially deadly pandemic virus and claims that officials cannot properly treat him---constitute the extreme case in which habeas relief might be available." Id. at 13. The court then concluded that based on the case's unique circumstances, "both the claim brought and the remedy sought are cognizable in habeas corpus." Id. The court found, however, that Camacho Lopez's continued detention in prison was proper and dismissed his habeas

petition. *See also* <u>Verma v. Doll</u>, Civil No. 4:20-14, (M.D.Pa. April 9, 2020) (court found petitioner, an ICE detainee, "plainly seeks a habeas remedy" where he requested immediate release from custody based on alleged "constitutionally deficient conditions of confinement that threaten his life and health" in light of the COVID-19 pandemic); <u>Saillant v. Hoover</u>, 2020 WL 1891854, *3 (M.D.Pa. April 16, 2020) (the court agreed with the conclusions of the courts in <u>Verma</u> and <u>Camacho Lopez</u> "finding that a claim based on the COVID-19 pandemic [at CCCF by ICE detainee] is exactly the sort of 'extreme case' contemplated in [<u>Ali v. Gibson</u>, 572 F.2d 971 (3d Cir. 1978)]" "in which a petitioner may challenge the conditions of his confinement through a petition for writ of habeas corpus.").

In the present case, as in the above cited cases and as well as in <u>Cordaro</u>, 2020 WL 2084960, *4, and <u>Taylor</u>, *supra*, although Lenchick is not an ICE detainee awaiting his removal, he similarly seeks immediate release from custody at FCI-Danbury since he believes his health is in risk of contracting the COVID-19 virus since there are confirmed cases of the virus in the prison, which "is unequivocally a habeas remedy." <u>United States v. Serfass</u>, 2020 WL 1874126, *2 (M.D.Pa. April 15, 2020) (citation omitted). As the court in <u>Camacho Lopez</u> explained, 2020 WL 1689874, 11, the term "execution" of a petitioner's sentence is broadly defined by the Third Circuit "to include such matters as administration of parole, sentence computation, prison disciplinary proceedings, prison transfers, and even 'conditions' generally." (citing <u>Woodall</u>, 432 F.3d at 241-44).

8

In his instant filing, as in Cordaro, 2020 WL 2084960, *4, Lenchick clearly seeks relief that affects the execution of his 60-month prison sentence since he requests the court alter its terms and to immediately release him to home confinement. *See* Cordaro, 2020 WL 2084960, *4. Although Lenchick appears, in part, to raise a challenge to the conditions of his confinement at FCI-Danbury by alleging that "the medical staff is insufficient", he does not contend that he is being denied adequate medical care. In any event, he is seeking release from prison in his motion and not damages, and thus his filing is not a civil rights action. *See* Parmeley v. Trump, 2020 WL 1987366, *2 (S.D.Ill. April 27, 2020) (court held that proposed class action civil rights complaint filed by inmates incarcerated in federal prison and in BOP custody who sought release from prison due to the COVID-19 virus was not a remedy that was available under Section 1983 or Bivens, and that "[a] petition for a writ of habeas corpus is the proper route if a prisoner is seeking 'what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation.'") (citation omitted).

Additionally, while Lenchick demonstrates that he has filed a request with Warden Easter for compassionate release to home confinement due to the COVID-19 virus, he clearly has not yet exhausted all of his BOP administrative remedies. Nor does he contend that he filed an appeal of the Warden's April 29, 2020 response. Thus, Lenchick seemingly contends that

the COVID-19 virus along with the alleged unsafe conditions at the prison present an extraordinary situation in which exhaustion should be waived.

Also, Lenchick is construed as claiming that due to the threat that he may contract the COVID-19 virus at FCI-Danbury and based on his underlying medical conditions, he qualifies to be immediately released to home confinement based on the CARES Act and pursuant to the FSA, 18 U.S.C. §3582(c)(1)(A). "As amended by the First Step Act, 18 U.S.C. §3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Feiling, 2020 WL 1821457, *4 (E.D.Va. April 10, 2020). As stated, even though Lenchick has submitted a request for compassionate release with Warden Easter, his motion for compassionate release must be dismissed for lack of jurisdiction since he has clearly not exhausted his administrative remedies under §3582(c)(1)(A), "which requires that a defendant seeking compassionate release present [her] application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that [his] sentence should be modified, or (2) wait for 30 days to pass." United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020). *See also* United States v. Raia,

954 F.3d 594 (3d Cir. April 2, 2020); <u>United States v. Smith</u>, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020) (court held that defendant failed to fully exhaust his administrative remedies with respect to his motion for compassionate release "[b]ecause the Warden explicitly denied his [] request, [defendant] needed to exhaust by appealing the Warden's decision." (citing 28 C.F.R. §542.15(a); B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); <u>United States v. Brummett</u>, 2020 WL 1492763, at *1-2 (E.D. Ky. Mar. 27, 2020) (denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence)); <u>United States v. Edwards</u>, 2020 WL 1987288 (M.D.Tn. April 27, 2020) (Court denied motion for compassionate release without prejudice until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied). Here, it is apparent that Lenchick has not yet availed himself of all of his administrative remedies.

Secondly, the court cannot yet determine if Lenchick has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence even though he alleges that there are presently cases of the COVID-19 virus at the prison, since he has not exhausted his administrative remedies. *See* <u>Zukerman</u>, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling

11

reasons' warrant a reduction of [her] sentence."); <u>Raia</u>, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in <u>Raia</u>, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

Further, Lenchick does not demonstrate any "catastrophic health consequences" to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP. *See* <u>Zukerman</u>, 2020 WL 1659880, *3. Rather, he only speculates that the prison conditions may lead to him contracting the COVID-19 virus in the future.

As the Third Circuit in <u>Raia</u>, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* <u>Feiling</u>, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in <u>Raia</u>] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of

several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement); Smith, *supra* (same); Edwards, 2020 WL 1987288, *10 n.6 (court noted that the Third Circuit's conclusion in Raia that the exhaustion requirement was "non-waivable" and that the failure to exhaust administrative remedies forecloses compassionate release was not "mere 'dicta'").

Moreover, the Third Circuit in Raia, 954 F.3d at 597, stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *See also* Feiling, 2020 WL 1821457, *7 ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision."); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); United States v. Boyles, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); United States v. Wright, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address

whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement.").

Additionally, insofar as Lenchick is deemed as relying on the CARES Act, which was signed into law on March 27, 2020, as the basis for his release to home confinement, such reliance is misplaced.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. *See* United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement'

under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."). In fact, the CARES Act "does not mandate home confinement for any class of inmate." Valenta v. Ortiz, 2020 WL 1814825, *1 (D.N.J. April 9, 2020).

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." Id.

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020,[7] the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). Id. at *3; Cruz, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." Id.; Cordaro, 2020 WL 2084960, *6.

---

[7] See Furando, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

In short, the court finds that Lenchick's letter motion should be construed as a §2241 habeas petition since he seeks relief affecting how his sentence is executed, i.e., serving his sentence in home confinement as opposed to confinement in prison to which he was sentenced. *See* United States v. Serfass, 2020 WL 1874126 (M.D.Pa. April 15, 2020).

A petitioner may seek §2241 relief only in the district in which he is in custody. United States v. Figueroa, 349 F. App'x 727, 730 (3d Cir. 2009). This Court has no jurisdiction over Lenchick's habeas claims as he is not detained within this district at the time of the filing of his motion. As such, Lenchick must file his §2241 habeas petition in the U.S. District Court for the District of Connecticut since he is confined in prison in that district. Pursuant to 28 U.S.C. §2243, "[t]he writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004). Thus, for purposes of a habeas action, the petitioner's custodian is the warden of the institution holding the petitioner. *Id.* at 442. In the instant case, the only appropriate respondent is Warden Easter of FCI-Danbury, where Lenchick is currently confined.

In light of the foregoing, the court will direct the clerk of court to docket Lenchick's Doc. 706 motion as an emergency §2241 habeas petition and to assign it a separate civil number. The court will then direct the clerk of court

16

to transfer Lenchick's habeas petition to the U.S. District Court for the District of Connecticut.

## III.    CONCLUSION

Lenchick's Motion for Immediate Compassionate Release to Home Confinement related to the COVID-19 pandemic, **(Doc. 706)**, is construed as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and the clerk of court will be directed to docket Lenchick's Doc. 706 motion as an emergency §2241 habeas petition and to assign it a civil number. The clerk of court will then be directed to transfer Lenchick's §2241 habeas petition to the U.S. District Court for the District of Connecticut as the proper jurisdictional court. To the extent that Lenchick's filing could be considered as a motion for compassionate release, it is properly filed, will remain in his criminal case and be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Finally, insofar as Lenchick is deemed as seeking this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 3, 2020**

17-188-01